podium that tells you how much time you have left, so and I'll remind you that rebuttal is for rebuttal only. We call the first case Seeley v. Bruister. We'll hear first from Mr. Johnson. Joe Hanson. Thank you, Your Honor. Thank you, all three of you, Your Honors, to be here today to represent Mr. Bruister, Herbert C. Bruister, and Bruister Family Liability Company, which I will refer to as BFLLC. The court's order of May 3rd, 2016 moots the first issue, so there's only three of four issues remaining in our opening brief, and, Your Honors, the first one is, the first two applied to BFLLC. Plaintiffs did not seek, it's our position that plaintiffs did not seek a fee award order against BFLLC, and the district court's order stated that its basis for issuance of the fee award was guarded in the risk of fiduciary conduct of Mr. Bruister, Mrs. Smith, and Mrs. Henry. Of course, you waived that issue completely in the district court, didn't you? I don't believe we did, Your Honor. Well, you didn't raise it. I think we did raise it. You said your response to their motion for fees said you were representing BFLLC. Your Honor, I believe we preserved that issue. And you had the I think, Your Honor, the arguments that we are making today address those issues, and they address the issues based upon the fact that the court could not, the court clearly intended for the fee award order to apply to Mr. Bruister, Mrs. Smith, and Mrs. Henry. It didn't apply for, it didn't intend for it to apply to BFLLC. Your Honor, we appealed, we timely appealed the order. Well, there's no question that Judge Jordan has been very painstaking and meticulous in this case, and so it would seem to me that if he made that obvious, if that was a mistake and it was that obvious, it could have been brought to his attention. Well, Your Honor, what happened actually was Judge Jordan was going to hold an additional hearing that never occurred, and that's in our briefing today as well. And we never had the second telephonic oral argument regarding that matter, so we didn't have the opportunity to raise it there, and we certainly would have raised it there, and we believe that those issues are preserved for appeal today, properly. Did the plaintiff ask for attorney's fees against the, against the client? No, that's my argument, Your Honor. I don't believe the plaintiffs did ask for it against, the plaintiff said he did. If you look at footnote one, Your Honor, in document 487, record on 2-4-1, it's, it's clear, and the entirety of, the entirety of the brief focuses on the fiduciary, the illegal, or the, the alleged illegal fiduciary conduct of Mr. Brewster, Mrs. Smith, and Mrs. Henry. It does not focus on BFLLC, and it mentions BFLLC once in a footnote, the footnote one, and it talks about it being also responsible for, jointly and severally responsible for the 885 and the prejudgment interest, 1.275 only. It doesn't say anything else about it, so we think that they haven't even made the motion in the first place against BFLLC, Your Honor, and also, if you look at Judge Jordan's order, it didn't address BFLLC with one single reference in its factual findings, so there weren't any just a ministerial error that can be corrected today because we don't believe it was Judge Jordan's intent to have this apply to BFLLC, and I will say down the road in my argument that there are a, there are a ton of circumstances here related to ability to pay, the Bowen factor. Judge Jordan says, with respect to the Bowen factor, quote, the only Bowen factor that might mitigate against awarding fees is the ability to pay, but that issue remains cloudy. That's record on appeal 49917. That issue, as far as we're concerned, is, is continents away from cloudy, being cloudy, and if, if this court decides to uphold the insurance policy had covered liability instead of covering attorneys fees first, unless I'm misunderstanding things entirely, there wouldn't have been such a big question about ability to pay. And, Your Honor, in response to that, the, the government would not let the case settle, and that record is clear. The government would not let this case settle. That insurance was offered, and it was rejected, and so there was an ability to settle it, but the government didn't take the money when the money was there. That's the government's issue. It's not Mr. Brewster's issue, and I will say that if you allow this to go forward today and uphold without remanding for consideration on the issues that I'm talking about as it relates to Mr. Greenwald and Mr. Yazbek against the ESOP, because what they're going to do is they're going to take away what limited resources are left available to pay to Mr., to the ESOP. They're going to take them for attorneys fees, and that's the travesty here, as far as I'm concerned, and that's in our brief. Just going on to the second issue, if I could, Your Honors, that just, we believe that the District Court erred in issuing the fee award as it relates to BFLLC, because BFLLC is a non-ERISA fiduciary. They're not an ERISA fiduciary, so the only thing that can be had as damages against a non-ERISA fiduciary under Mertens and Harris Trust is appropriate equitable relief. An appropriate equitable relief under 50283 includes the $885,000 primary judgment against BFLLC, and the $390,000 worth of prejudgment interest, that's record on appeal 25160161, and anything outside of that is not appropriate equitable relief according to Judge Jordan, and we present that argument to you today. We also ask you to focus on Harris Trust. In Harris Trust and also in Mertens, the court indicated when it was saying there could be relief against a non-ERISA fiduciary, it said, quote, the limiting principle explicit in section 50283 that the relief sought must be appropriate equitable relief. If you let these folks get attorney's fees against BFLLC, and that's at $530,000 U.S. at $250,000, if you let them get attorney's fees against BFLLC, appropriate is going to be meaningless, and it won't be equitable relief, and that's our position in that respect. Furthermore, they waived, Your Honor. Zealy plaintiffs asserted in the district court that the appropriate equitable relief was $390,000, so they waived it. Mr. Copley, Mr. Greenwald, and Mr. Yazbeck waived that issue below. They failed to appeal that order, the appropriate equitable relief order, so they can't get more than that now through some attorney's fees motion. None of the cases in the Supreme Court say that attorney's fees under ERISA are not allowed in these circumstances. And none of the cases say that they are allowed, and they basically say that it's appropriate equitable relief, Your Honor. I understand that, but I mean, you briefed inside a single lower court case that has denied fees on this basis, and a few have. Your Honor, in our opinion, you look at the words appropriate equitable relief, and you're going to gut the meaning of appropriate and equitable relief if you allow . . . You're going to enforce the 502 whatever it is that grants attorney's fees. 502 G says you get appropriate equitable . . . excuse me . . . 502 G has to tie into 502 A of ERISA, 502 A2, and 502 A3. 502 A3 has been handled by Judge Jordan's order, and there was no appeal of that order, so how can they get more than that appropriate equitable relief today, Your Honor? And also, you're talking about a situation in which there's three . . . Mr. Greenwald and Mr. Copley have a $2 million of the $3 million fee award here, so now you're going to basically, for an $885,000 judgment, you're going to apply $3 million worth of fees against an $885,000 . . . It's joint and several liability. But we don't know how it's allocated. They won't tell us how it's allocated. Of course not. That's what joint and several liability is. It's up to the defendants. Well, Your Honor, I believe it's also up to the court to give us some guidance in that respect, and I think that the lower court should have to do that here. We also . . . after we appealed and we briefed here, we do point your attention to Montanile. I think Montanile is an important U.S. Supreme Court decision that needs to be looked at here. 136 Supreme Court 651, 2016. I think it strengthens Mertens v. Hewitt. I also think it makes it clear that it would be inconsistent with appropriate equitable relief to allow attorney's fees to be granted on top of the appropriate equitable relief that Judge Jordan ordered, and I also think that there's no finding by the district court here that any attorney fee awarder against BF LLC could be traceable to BF LLC from the east side. So that's not in the record anywhere, and there's nothing in the record below in the post-judgment proceedings that address that. So if there can't be tracing, I don't know how under Montanile you can get more out of BF LLC than Judge Jordan already ruled, Your Honors. Thank you for that. I'm going to just a few concluding remarks on 502A3 in Montanile. The court basically said if there's a complete dissipation of wrongfully obtained funds, and we're assuming for this argument that the funds obtained by BF LLC were obtained wrongfully, that eliminates the lien. It's gone. You can't attach BF LLC's general assets, which are extremely limited. The only thing that's left is the viaticals, and those are being fought over so that these folks can get a piece of the viaticals to the detriment of the BAI ESOT, and I think that's wrong, and we think that's wrong, and we posit that to you today. Your Honors, I'd like to finish with one last argument that applies both to Herbert C. Brewster and BF LLC, and we believe that this final third issue, nothing was achieved by the plaintiffs that was not achieved by the government in the Perez case. So you had two cases, the Perez case and the Rader case. Nothing was achieved in the Rader-Perez case that was, or excuse me, nothing was achieved in the Rader case that was greater than the Perez. Setting aside the fact that the district court may have imprudently refused to consolidate these early on, is it not correct that you refused to allow discovery consolidation? That's not correct, Your Honor. We wanted to consolidate the cases at the beginning. I understand that. I am saying that once the district court denied that, perhaps imprudently, they assert that you also refused to go along with single depositions for the witnesses. Your Honor, I think we were ready to, we made it clear to the lower court many times we wanted the cases consolidated, and we were rejected. That's not my question, and you're not answering my question. Your Honor, I believe. Let me just say, that's a concern for me as well. I really want a direct response. Did you or did you not refuse to agree to have some consolidated form of discovery? I don't remember at this moment because of the record. I'm not, I'm not going to give an answer that I can't guarantee is correct, Your Honor. So I don't know, and I do know that our argument was that you consolidated the cases. So we tried to, and the court wouldn't let us do so. That was our position. You can't really refute what opposing counsel said in his brief that you refused to do that. You can't refute that. I can't. Honestly, I cannot refute that position right now because the record is voluminous after seven years. I'm sorry I can't answer that question at this moment. I just don't recall what the position was. I know that we worked hard to consolidate the cases quite a bit before that point, and we wanted to. I also know that there was a substantial amount of settlement efforts that were rebuked by the government that wouldn't let us settle the case. That was also in the lower court. Your Honors, if I could finish with my, my 16 minutes here, I just would like to make a couple other points about this. Had the district court found that this case resulted in greater recovery, this case meaning the Rader and Seeley case, resulted in a greater recovery than in Perez because of some inadequacy of some attorney's fees because of the work they did. But you can't do it when there's nothing in the record that makes it, there's no, there's nothing in the order that makes it clear there was something that, that Mr. Copley's team and Mr. Rader, Mr. Greenwald's team and Mr. Yazbek's team did that made sure that the government would get its 4.5 million dollar judgment. Well, actually they got a judgment against BFLLC. They got a judgment against BFLLC and my arguments are holding true with that. BFLLC is the, is not an ERISA fiduciary. It's not subject to relief beyond what the ceiling was set forth in the order in the Harris Trust and the Mertens case and also for the arguments I made earlier about there was no, there was no appeal of the 885 and the 390 by the plaintiffs. So that sets the ceiling and that's the end of that. So yes, that is something that there's appropriate equitable relief and it's been granted and it's, there's a limited amount of assets to make good on it and what you're going to do if you give that attorneys fees to these folks on that front, it's going to take away from the ESOP. Nothing was achieved by them that wasn't achieved by the Secretary. Yes, Your Honor, if I... What evidence did you offer that their participation in the lawsuit was worthless? Excuse me? What evidence did you offer that their participation was worthless? I didn't say it was worthless. I said there was no evidence that they presented at trial. I mean, they had, they had an expert that actually was right around the same level as the Messina expert, the government's expert, by they I mean the Rader plaintiffs, so we could have taken their expert out and based upon your standard of averaging the two valuations, we would have gotten to the same place. That's, that's the evidence in my opinion. They didn't know that. I mean, you go into a trial and you don't know what the others, what other plaintiffs are going to offer. I don't know of any authority that says a lawyer can't represent his client and put evidence on and under arrest they'll get attorney's fees for it. Your Honor, I think they did know that. They were working closely together. There's evidence that they were working... Nobody knows how the trial is going to go and how the evidence is going to break. You know that. Your Honor, I believe that, again, what we're doing here is we're giving these attorneys who go around and and sue people all over the country, we're giving them an ability to get something greater than the ESOT gets here by awarding them attorney's fees, in this case related to H. Herbert C. Brewster and Brewster Family Limited Liability Company. They refused to go to Rule 23. They refused to apply the Rule 23 restrictions and they had no client control here. Mr. Rader and Mr. Seeley never even showed up at trial for four weeks. This is an attorney motivated and generated lawsuit. It's nothing more than that and I appreciate the time's up and I'll thank you for my time and I'll come back for my four minutes of rebuttal. Thank you very much. Thank you for listening to us. Mr. Copley. May it please the Court, my name is David Copley on behalf of the plaintiffs, Mr. Rader. Tell me what value you added to this case. I'd be happy to, Your Honor. First, I think I'd like to call upon the good offices of Judge Jordan because he set it out in his order. He made findings of fact about this. He said he could not agree that we added no incremental value or that our efforts were duplicative. He noted that discovery was going on separate tracks. It was apparent that we coordinated our case with the Secretary, splitting up the leads on various examinations, so we did work that the Secretary didn't have to do in order to reduce the burden on both sets of plaintiffs. We added considerable value to the prosecution of these claims through their briefing, preparation, and courtroom appearances. The asylee attorneys were skilled and knowledgeable in ESOP litigation and they added incremental value in the court's estimation. Now, these are findings of fact that are reviewed by this court under a clearly erroneous standard. Can you put a little finer point on it and tell us precisely what value you added and how you added it? Yes, sir. I guess starting at the beginning, we filed our complaint first. We filed our case before the Secretary even got involved. We got the case rolling, then the Secretary got involved a few months afterwards. In terms of what value we added, the client asked us to stay involved in the case even after the Secretary filed his case, actually her case at that time, but now his case. The Secretary wanted us to remain involved because the Secretary recognized the expertise that we brought to the action that would complement their expertise and we believe it was in the best interest of the class that we remain involved. You weren't representing a class. You never sought class certification and in my view, having written the first opinion in this case, had the Secretary not been there, you would have been out. I misspoke, Your Honor. Thank you for the correction. Who's going to distribute the money to the participants in the ESOP? The government, right? Well, the money will go to the ESOP and then the ESOP will distribute the money to their participants. Yeah, but not under the current trustees, right? Honestly, I don't know if an independent . . . So anyway, you're going to be out and away and done with it after the judgment becomes final except for your fees, right? With our collection efforts. We continue, I believe there are now three separate lawsuits involved trying to collect assets for the benefit of the ESOP. You'll get more fees for that, won't you? I don't know if there's a fee shifting clause under those causes of action, Your Honor. I apologize. I just don't know. I know it's a malpractice claim and an insurance claim, a bad faith claim, and I honestly can't tell you if there's a fee shifting available there. But at the trial, did you and the government lawyers split up the witnesses and experts and you take some and they took some? Absolutely, Your Honor. We coordinated that carefully. We coordinated on the witness list. We split up the pretrial briefing, the motions liminee, because although there were slightly different issues presented by the two cases, we had a united effort in terms of getting the best result possible on behalf of the ESOP. And the fact that we had private plaintiffs and the government involved, that had the advantage of putting extra leverage on the defendants. We had different claims in the two actions. That was an advantage. The secretary never sued BFLLC. We chose to. We got a judgment on behalf of the ESOP against BFLLC. If we hadn't been there, that never would have happened. Our case ensured the possibility of insurance, even though it was dissipated by attorney's fees. The defendants paid their lawyers more than $8 million. There went the insurance policy. But still, our case allowed the possibility of getting those insurance proceeds, had it not been dissipated, and now it gives us an opportunity to use the dissipation of the insurance proceeds as part of an insurance bad faith claim and a malpractice claim in our collection proceedings. So that's a really important part of the overall action. And lastly, the private counsel, not only did we split up witnesses and exhibits with the government, but the private attorneys in this case, the Rader attorneys, my partner Mr. Greenwald and Mr. Yesbeck and Mr. Watson, were highly experienced. Mr. Greenwald had 45 years of experience. How many of these cases have you filed against an ESOP representing an individual participant rather than seeking to represent a class? I know of at least three, Your Honor. And, you know, a big issue in this case was standing, your client standing as an individual to sue the ESOP. Now, the district judge, we didn't have to reach the merits of that, but if you have such great experience, why don't you file these things as class actions? Your Honor, sometimes they are filed as class actions. Most night, I mean, we looked for those that weren't filed as class actions and we had a real hard time finding them. And the reason is, I mean, the reason for the client, my colleagues, is that you have fiduciary duties to a class. True, Your Honor. And the court has fiduciary duties to the class. And if you're just hauling out there on behalf of two people who didn't even show up at trial, then there's some reason to question what your interests are vis-à-vis a class. Well, a couple things, Your Honor. The case was brought on behalf of the ESOP through Mr. Seeley and Mr. Rader. They had statutory standing to step in on behalf of the ESOP. That's a dubious proposition. I understand, Your Honor. And the reason we chose not to, or the reason my partner, Mr. Greenwald, chose not to seek class certification is based on his 45 years of experience and his eight different ESOP trials that he's taken to trial and judgment, he did not believe that class certification was appropriate or necessary. And the courts have agreed with that. I'm thinking of the Henry v. Champlain case, which I believe is a Second Circuit case, where there was no class certification. Individual participants stepped forward on behalf of the ESOP, got relief that was paid to the ESOP, and I understand your misgivings, Judge Jones, concerning standing, but that is not an impediment in every case, and the best judgment of plaintiff's counsel here is that it was not going to be an impediment in this case. And whether by luck or foresight, it turned out that was correct. No, it turned out it was correct because the government was there to make sure that the ESOP participants get their fair share. Fair enough. Which they may not if you eat up half the attorney's fees. Well, again, there was an allegation that Mr. Johnson just made that this is just a greedy lawyers and we're going to take all the money and that's why we're trying to get attorney's fees here. But it's not a zero-sum game. We don't know if it's a zero-sum game. If we collect money on behalf of the judgment on behalf of the ESOP and we collect the attorney's fees award, then the ESOP is made whole and the attorneys get whatever they're going to get. If for some reason we're not able to collect 100% on the judgment or 100% on the attorney's fees or both, then you're right. Then something's got to give. And my supposition is that the recovery by the ESOP will come first. They're going to get their recovery. And if the total recovery is less than the amount of the judgment, then we may have to go back to Judge Jordan and ask for recovery not under ERISA fee shifting but under the common fund theory. Because let's say we recover $4 million of the $6 million judgment on behalf of the ESOP and we get nothing towards the $3 million in attorney's fees. At that point, myself, my law firm, and my co-counsel would have nothing to show. We might then in the future, I don't know, but we might go to Judge Jordan and ask for an equitable award based on the common fund theory. But that is not the question before this Court. Hopefully, we're able to recover on the judgment. We're able to levy judgment on the attorney's fees award and the plaintiff's counsel are mayful in this case. Your opponent said you didn't ask for attorney's fees against BFLLC. That is not correct, Your Honor. Tell me where it is. Of course. In our motion for attorney's fees, we asked for an award against all defendants and we defined defendants as Mr. Brewster, Ms. Smith, Ms. Henry, and BFLLC. The defendants responded to that motion and they responded on behalf of all defendants and they defined all defendants as including Henry, Smith, Brewster, and BFLLC. Counsel filed the opposition papers and the signature block says counsel for Henry, Smith, Brewster, and BFLLC. They opposed, all the defendants opposed our motion for fees. And then Judge Jordan, who knew who the parties were, he knew who the defendants were after he sat through a 19-day trial, he entered judgment against all defendants in the fee award. And the judge was very sensitive to potential differences between the different defendants because in his judgment, which was affirmed back in May, he paid special attention to the liability of BFLLC, which was different from the liability of the individual defendants, Brewster, Henry, and Smith. So there's no question that we asked for relief against BFLLC. The judge granted that. And perhaps most importantly, if the defendants thought that they had a separate defense that related only to defendant BFLLC, they could have said so. They could have opposed our fee motion, as they did, saying, well, they shouldn't get anything. But they could have added a second argument that said, and in particular, they should get nothing against BFLLC, and then they could have laid out all the arguments that they raised for the first time on appeal. They never raised any of that. They never raised any individualized arguments concerning BFLLC. And we respectfully suggest that that argument has been waived. And as we say in our brief, even if it hadn't been waived, it would have been wrong as a matter of law. If I may quickly move on to Mr. Johanson's secondary argument concerning BFLLC. He kept talking about 502A3 posing a ceiling on the equitable release that can be granted against a non-fiduciary. And he talked about the Mertens case and the Montanil case. And what he's missing here is that we are not seeking fees under 502A3. 502A3 was decided on the merits back in May. Now, there are two different statutory provisions here. There is a remedial provision under 502A3 that held BFLLC responsible for roughly $1.2 million. And then there's a separate provision under ERISA 502G1 that provides for fee shifting. And 502G1 applies in any action under this subchapter. It doesn't say only under 502A2 if you happen to be a fiduciary. It applies in any action under the subchapter, and that includes 502A3. Let me ask you a question related to Montanil because, as I understand it, that case held that if the—in a subrogation context under ERISA, if the person who was a beneficiary of the ERISA plan had squandered the funds before the company came after them, then he couldn't get equitable—the company couldn't get equitable relief against that person, right? Because the funds weren't traceable. Yes. All right. It's a concept of equity. How are the funds traceable in this BFLLC, number one, and alternatively, how are they traceable at all beyond the approximately $1.2 million that the court awarded in judgment? I'm not sure I grasped the question, but let me try. Well, the theory is that the BFLLC, not a fiduciary, received proceeds of the sales of this stock, right? Yes. It didn't receive what it contracted for, but it received proceeds. So therefore, the proceeds were being traced into the BFLLC, I believe, right? The proceeds of the BFLLC were traced into that entity, yes. Right. And suppose—so to me, they're in the same position as the employee in the Montanil case. And why shouldn't there be a tracing requirement or a limitation of the liability of the BFLLC to approximately the amount of ill-gotten money received? Okay. As I understand the question, Your Honor, this question concerns liability under 50283, and that judgment was affirmed in May, and now collection proceedings are going on in the district court to try to collect the money that was awarded to the ESOP against BFLLC. Right. And one of the issues in the collection actions may be the traceability issue. And so, for example, if the defendant BFLLC says, I squandered the money, you can't collect it, that will be an instance that goes to the district judge in the first instance. I don't—there's no evidence before this court, or that I know for that matter, that there's evidence either way on whether the BFLLC squandered that money. So that might be an issue, but it's just not before us. It's not before this court, and there's nothing in the record either way. Okay. Now, in terms of the 502G1 remedy, that's what we're talking about today. Because 502G1, and, you know, lays this out very clearly. It says, in any action under the subchapter—oh, let me find the language— the court, in its discretion, may allow a reasonable attorney's fee and cost of action to either party. And the Supreme Court addressed this in the Hart decision back in 2010. And the court, Hart said, this statutory language is very clear. This is an independent basis for awarding attorney's fees. It doesn't depend on—there's no prevailing party requirement. There's no requirement that you go through a checklist, as used to exist under this court's Bowen decision. The only limitation on the court's discretion here is if there is some degree of success on the merits. If there is some degree of success on the merits, then a court, in its discretion, may award attorney's fees to either party, the plaintiff or the defendant. And the court in Hart called upon the district court making that kind of decision to do so without conducting a lengthy inquiry into whether a particular party's success was substantial or occurred on a central issue. And that's exactly what Judge Jordan did in this case. He tried the case himself. He knew what happened. He knew what the judgment was. And he said, there's no question here that the plaintiff's achieved success on the merits. So let's move right on and figure out what the attorney— and I'm going to use my discretion to award attorney's fees. And let's move right on to the lodestar analysis and figure out what that attorney's fee should be. And then in exercising his discretion, the judge made findings of fact about the incremental value that plaintiff's counsel added to this case. Judge Jordan heard and considered all the arguments you just heard this morning about, well, the plaintiffs didn't do anything, the Department of Labor could have done all the work. Judge Jordan had seen with his own eyes and heard with his own ears. He knew whether the plaintiffs made a valuable—the Rader plaintiffs made a valuable contribution or not. And he determined that they had, in fact. And once the judge makes that decision under 502G1, the judge can award attorney's fees in his or her discretion, regardless of whatever remedy was awarded under 502A2 or 502A3, the remedial parts of ERISA. Because 502G1 stands alone, and there are numerous cases making that point, including the Spain case from the Ninth Circuit. There's simply—and there is no case anywhere that says you can't award fees under 502G1 if that would exceed the amount of equitable relief granted under 502A3. Surely that's a consideration the judge can make when he decides the fees under G1. Of course. I mean, the judge has wide discretion. The judge—in effect, the judge talked about his discretion here. He said, well, I hear the argument that the Department of Labor could have done this by themselves. And he weighed that. He exercised his discretion and found that notwithstanding that argument, plaintiffs—the private plaintiffs made a meaningful contribution and were entitled to a lodestar fee award. Frankly, he sounded a little bit wistful to me that defendants hadn't bothered to challenge the hourly rate or the legitimacy, the reasonableness of the amount of hours expended. He kept saying, well, they've asked for all or nothing. They've asked for all or nothing. I'm just—that's an editorial comment. Yes, Your Honor. I don't—I didn't read it as wistful, honestly. I'm sure you didn't. I read it as sort of a Hail Mary pass. The defendants are—they're betting it all in this argument that the plaintiffs should get nothing because once the Department of Labor steps into a case, that should be the end of the matter. And here, I mean, he actually went through the lodestar analysis. He said, they gave me 360 pages of fee reports, detailed time entries for many years. They took dozens of motions, dozens of depositions. I saw them in trial every day. I know what they did, and I'm satisfied that under the lodestar analysis, this fee award is appropriate. I would be happy to answer any other questions, but thank you for your time. Thank you very much. We respectfully ask that the judgment be affirmed. Thank you. Okay, Mr. Johanson. Quickly, on my rebuttal for my clients, I want to start with the traceability issue. Mr. Copley casually says there's nothing in the record on appeal about that. There is a lot on the record on appeal. Footnotes 6 and 7 have substantial references to the record on appeal about the issue of traceability and the inability of Mr. Brewster and BFLLC and the other defendants to pay, so it's very clear that it's there. And sticking to the rebuttal only, I will just go down the list. Incremental value, Mr. Copley never really answered your question about whether or not there was incremental value. There was nothing specific that he said that the plaintiff's attorneys did, the private plaintiff's attorneys did. They participated, and they took some of the witnesses. They helped prepare for the testimony and got the exhibits together. Your Honor, I attended the hearing, and what I saw at the hearing was on the first day, a lion's share of the people there were government agents and attorneys who were presenting the case, and they were actively involved. And these are people that have over – a number of them have over 30 years' experience. We were reviewing what a district court did. It was there, too. Yes, I understand, Your Honor. I just don't think he answered your question. I don't think there was – it didn't answer the question of what did they do that they needed to do that achieved some of the value here in terms of the ultimate judgment. Why are we saying that the government didn't do a good enough job? Was there evidence there? Was there any evidence that the government didn't do a good enough job to get the judgment? I don't think so, and that's the issue in my opinion. As to who filed first, I think these plaintiffs have been following around Mr. Donnelly in a number of different cases, and they'd been doing it long before they filed this case. So they were involved with the government in a prior case and in other cases, and they found out that Mr. Donnelly had this criminal record that was not disclosed to anybody, and they decided this was a good place for them to go. So they tagged along with the government in a prior case, and they tagged along with the government here. And they filed in the wrong place first. They filed in California. The government then filed in Mississippi, and that's where the case ended up, was in Mississippi, not California. So it's not just a simple matter of filing first. As far as who's going to control the distribution of assets, these folks are going to control the distribution of assets. He doesn't even know that there has been an independent trustee, quote-unquote independent fiduciary appointed, but a lion's share of the assets that Mr. Brewster is handing over in terms of collection efforts are going to an LLC that is headquartered in Phoenix, which is where Mr. Greenwald's office is, and it's run and managed by the folks at Keller-Rorbach. So they're the ones who are going to decide where the money goes, and they've got their agreement, and that's the people who are going to marshal out the assets. They're going to get- Has the district court ordered that? Excuse me? Has the district court ordered that? The district court didn't order it. In a recent hearing, there was some separate agreement that occurred between the government and the ESOP, the independent fiduciary, and these folks that would basically provide for that, and the district court didn't order it. It was what they agreed to do, and the district court hasn't responded to that in a formal written order at this point. The other issue, I think you're correct, Your Honor, that there's going to be plenty of fees for these folks in other actions. They've got three other actions that they're going to try to collect fees on, and again, because of the lack of assets for Mr. Brewster and BFLOC, it's impossible for them to get there. Just quickly, common fund theory. He played his whole story there. They're going to go after them with common fund theory, and then they're going to pit themselves in conflict against the ESOP, and that's what I think is going on here. So we do ask you one other point, if I will. Do you have a red light, sir? Do you have a red light? Okay. Thank you very much. Thank you.